**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| JAMES E. JOLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 23-0221-RGA |
| v. | ) | |
| | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| JUSTICE, ATTORNEY GENERAL | ) | |
| KATHY JENNINGS, CHIEF DEPUTY | ) | |
| ATTORNEY GENERAL ALEXANDER | ) | |
| MACKLER, and JOHN DOES, | ) | |
| | | |
| Defendants. | | |


**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE COMPLAINT**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

*/s/ Zachary S. Stirparo*
Zachary S. Stirparo (#6928)
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
*Attorney for Defendants*

Dated: July 31, 2023

# TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................................................... iv

NATURE AND STATE OF THE PROCEEDINGS ....................................................... 1

SUMMARY OF THE ARGUMENTS ........................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

ARGUMENT ................................................................................................................. 4

I.      LEGAL STANDARD ......................................................................................... 4

II.     THE DELAWARE ATTORNEY GENERAL AND CHIEF DEPUTY
        ATTORNEY GENERAL SHOULD BE DISMISSED AS PLAINTIFF HAS
        FAILED TO SUFFICIENTLY PLEAD HOW THEY WERE PERSONALLY
        INVOLVED .......................................................................................................... 5

III.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS
        FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ........... 7

        A.      Plaintiff has failed to allege any facts supporting his claims .................. 7

        B.      Plaintiff does not Possess a Protected Property Interest Under the
                Fourteenth Amendment or Article I, Section 7 of the Delaware Constitution
                because Inclusion on the Brady List is not a Complete Prohibition ....................... 9

        C.      Plaintiff's Procedural Due Process Rights were not Violated because he was
                provided an Opportunity to Be Heard ..................................................... 11

IV.     DEFENDANTS ARE IMMUNE FROM SUIT ............................................... 12

        A.      The Delaware Department of Justice should be Dismissed from this Case
                Because it Enjoys Sovereign Immunity ................................................... 12

        B.      The Brady Board, Delaware Attorney General, and Chief Deputy Attorney
                General Enjoy Absolute Prosecutorial Immunity .................................... 13

        C.      The Brady Board, Delaware Attorney General, and Chief Deputy Attorney
                General Are Entitled to Qualified Immunity ........................................... 16

        D.      The Brady Board, Delaware Attorney General, and Chief Deputy Attorney
                General Are Entitled to Sovereign Immunity as to Counts III and IV ................. 18

V.      COUNTS III AND IV OF THE COMPLAINT SHOULD BE DISMISSED
        BECAUSE THEY FAIL AS A MATTER OF LAW ........................................................18

        A.      Count III of the Complaint should be Dismissed Because Plaintiff Does Not
                Enjoy a Private Cause of Action Under Article I, Section 7 of the Delaware
                Constitution..........................................................................................................18

        B.      Count IV of the Complaint Should Be Dismissed Because Defendants Are
                State Actors and the Writ of Mandamus is Based on Delaware Law ...................19

VI.     THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL
        JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS ...................................20

CONCLUSION........................................................................................................................20

# TABLE OF CITATIONS

*Adamson v. Pierce Cnty.*, 2022 WL 1667016 (W.D. Wash. May 25, 2022) .......................... 14-15

*Alexander v. Minner*, 2009 WL 1176456 (D. Del. May 1, 2009) ...................................................6

*Alston v. Admin. Offs. of DE Cts.*, 663 F. App'x 105 (3d Cir. 2016) ...........................................13

*Amaro v. Taylor*, 170 F. Supp. 2d 460 (D. Del. 2001) ................................................................6

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ..............................................................................11

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ..............................................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................................4-5

*Barkes v. First Corr. Med., Inc.*, 766 F.3d 307 (3d Cir. 2014) ...................................................6

*Barna v. Bd. of Sch. Dirs.*, 877 F.3d 136 (3d Cir. 2017) .........................................................17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................4

*Brady v. Maryland*, 373 U.S. 83 (1963) ...........................................................................3, 13, 15

*Brosseau v. Haugen*, 543 U.S. 194 (2004) .............................................................................17

*Buchanan v. Gay*, 491 F. Supp. 2d 483 (D. Del. 2007) .......................................................... 15-16

*Carr v. Town of Dewey Beach*, 730 F. Supp. 591 (D. Del. 1990) ...............................................18

*Cochran v. Mun. Ct. of City of Barberton*, 91 F. App'x 365 (6th Cir. 2003) ...............................20

*Daniels v. Williams*, 474 U.S. 327 (1986) .............................................................................11

*De La Cruz v. Irizarry*, 946 F. Supp. 2d 244 (D.P.R. 2013) .....................................................19

*Desmond v. Phelps*, 2017 WL 586358 (D. Del. Feb. 13, 2017) .............................................. 19-20

*Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412 (3d Cir. 2008) ...............................11

*Estep v. Mackey*, 639 F. App'x 870 (3d Cir. 2016) ...................................................................17

*Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005) .......................................................................6

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ......................................................4-5

*Giglio v. United States*, 405 U.S. 150 (1972) ...................................................................... 3, 13-14

*Gillespie v. Hocker*, 2015 WL 4468922 (D. Del. July 22, 2015) ......................................8

*Hedges v. Mosco*, 204 F.3d 109 (3d Cir. 2000) ...................................................................20

*Hill v. Borough of Kutztown*, 455 F.3d 225 (3d Cir. 2006) ............................................8

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ......................................................................14, 16

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ....................5

*In re Wallace*, 438 F. App'x 135 (3d Cir. 2011)..........................................................19

*In re Wolenski*, 324 F.2d 309 (3d Cir. 1963) ...................................................................19

*James Joles v. Del. Dep't of Justice*, K22M-03-016 RLG .............................................1

*Kimbleton v. White*, 2014 WL 4386760 (D. Del. 2014) .............................................18

*Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981).....................................................12

*Law v. Pierce*, 2020 WL 6799162 (D. Del. Nov. 19, 2020) .........................................5

*Mathews v. Eldridge*, 424 U.S. 319 (1976).......................................................... 11-12

*Mullenix v. Luna*, 577 U.S. 7 (2015)................................................................... 16-17

*Neri v. Cnty. of Stanislaus Dist. Attorney's Off.*, 2010 WL 3582575 (E.D. Cal. Sept. 9, 2010) ...15

*O'Donnell v. Simon*, 362 F. App'x 300 (3d Cir. 2010) ...................................................9

*Parratt v. Taylor*, 451 U.S. 527 (1981)..........................................................................11

*Pearson v. Callahan*, 555 U.S. 223 (2009).....................................................................17

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) .................................18

*Piecknick v. Pennsylvania*, 36 F.3d 1250 (3d Cir. 1994)...............................................9

*Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431 (3d Cir. 2020)...........................17

*Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4 (2021) ................................................... 16-17

*Robinson v. Danberg*, 729 F. Supp. 2d 666 (D. Del. 2010)........................................13

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988) ...................................................6

*Rodriguez v. Cahall*, 2023 WL 569358 (Del. Super. Ct. Jan. 27, 2023) ......................19

*Saucon Valley Manor, Inc. v. Miller*, 392 F. Supp. 3d 554 (E.D. Pa. 2019) ................11

*Schueller v. Cordrey*, 2017 WL 568344 (Del. Super. Ct. Feb. 13, 2017).....................19

*Showell v. Carney*, 2021 WL 3633641 (D. Del. Aug. 16, 2021)................................ 5-6

*Southerland v. Pennsylvania*, 389 F. App'x 166 (D. Del. 2010)...................................17

*State v. Jackson*, 2022 WL 18401412 (Del. Super. Ct. Dec. 28, 2022)........................... 3, 7, 9-10

*Stone v. Martin*, 720 F. App'x 132 (3d Cir. 2017)........................................................20

*Tillotson v. Dumanis*, 2012 WL 667046 (S.D. Cal. Feb. 28, 2012), *aff'd*, 567 F. App'x 482
  (9th Cir. 2014)...................................................................................................10, 12

*Tofsrud v. Spokane Police Dep't*, 2021 WL 2229277 (E.D. Wash. June 2, 2021), *aff'd sub
  nom. Tofsrud v. City of Spokane*, 2022 WL 1451394 (9th Cir. May 9, 2022), *cert.
  denied*, 143 S. Ct. 215 (2022) ...........................................................................10

*Turney v. Att'y Gen. for U.S. ex rel. Sec'y of Lab.*, 502 F. App'x 180 (3d Cir. 2012) ...................5

*United States v. Agurs*, 427 U.S. 97 (1976) ...............................................................13

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009)........................................................14

*Weimer v. Cnty. of Fayette*, 972 F.3d 177 (3d Cir. 2020)............................................16

*White v. Bramble*, 2006 WL 182055 (D. Del. Jan. 24, 2006).....................................13

*White v. Pauly*, 580 U.S. 73 (2017) ................................................................... 16-17

*Yarris v. Cnty. of Delaware*, 465 F.3d 129 (3d Cir. 2006) ..........................................16

*Zinermon v. Burch*, 494 U.S. 113 (1990)...................................................................11

## STATUTES AND OTHER AUTHORITIES

U.S. Const. Amend. XI...........................................................................2, 12-13, 18

U.S. Const. Amend. XIV ................................................................................. *passim*

Del. Const. art. I, § 6 ...................................................................................19

Del. Const. art. I, § 7 ...........................................................................18, 20

28 U.S.C. § 1361 ....................................................................................19

28 U.S.C. § 1367 ....................................................................................20

28 U.S.C. § 1651(a) ................................................................................19

42 U.S.C. § 1983 ................................................................................ *passim*

11 Del. C. § 8404 ....................................................................................4

11 Del. C. § 8410 ....................................................................................4

Fed. R. Civ. P. 8(a)(2) .............................................................................5

Fed. R. Civ. P. 12(b)(6) ...........................................................................5

## NATURE AND STAGE OF THE PROCEEDINGS

On March 1, 2023, Plaintiff James E. Joles ("Plaintiff") filed a *Complaint and Writ of Mandamus* ("Complaint") in this Court, stemming from his placement on a so-called "Brady List" based on an incident of misconduct while employed as an officer with the City of Milford Police Department. D.I. 1. Plaintiff named as defendants the Delaware Department of Justice (the "DOJ"), Attorney General Kathy Jennings, Chief Deputy Attorney General Alexander Mackler, and John Does, the unknown members of the "Brady Board" from July 2018 to present (collectively, "Defendants"). D.I. 1, p.1. Plaintiff brings claims for violations of his Fourteenth Amendment due process rights pursuant to 42 U.S.C. § 1983 (Counts I and II) and his rights under Article I, Section 7 of the Delaware Constitution (Count III), and a request for a writ of mandamus (Count IV). The Complaint follows a previous action Plaintiff filed in the Delaware Superior Court seeking a writ of mandamus directing the DOJ to remove him from the "Brady List." *James Joles v. Del. Dep't of Justice*, K22M-03-016 RLG (Del. Super. Ct.). The parties stipulated to a dismissal of that action on June 7, 2022.

## SUMMARY OF THE ARGUMENTS

I.      The Delaware Attorney General and Chief Deputy Attorney General should be dismissed from this case because Plaintiff has failed to adequately allege how they were personally involved in this case. Plaintiff's allegations that they are liable because of their supervisory authority and were "aware" Plaintiff had been placed on the Brady List are insufficient to meet the federal pleading standard.

II.      The Complaint should be dismissed because Plaintiff has failed to state a claim that his procedural due process rights were violated. First, he has not sufficiently alleged any facts that he was barred from being hired as a Delaware police officer because he was on the Brady List and his only averment of fact simply alleges he was informed he may be on the Brady List. Second,

being placed on the Brady List is not a complete prohibition from being hired as a Delaware police officer. Third, Plaintiff was provided an opportunity to be heard and submitted a letter contesting his placement on the Brady List.

III. The Complaint should be dismissed because Defendants are immune from suit. The Delaware Department of Justice enjoys sovereign immunity under the Eleventh Amendment to the U.S. Constitution. The Brady Board, Delaware Attorney General, and Chief Deputy Attorney General enjoy absolute prosecutorial immunity or, alternatively, qualified immunity. The Brady Board, Delaware Attorney General, and Chief Deputy Attorney General are also entitled to sovereign immunity as to Plaintiff's state law claims.

IV. Count III and Count IV should be dismissed because Plaintiff does not enjoy a private cause of action under Article I, Section 7 of the Delaware Constitution and Count IV should be dismissed because Defendants are state actors, and the writ of mandamus is based on Delaware law.

V. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims because Plaintiff's federal claims fail to state a claim.

## STATEMENT OF FACTS[1]

Plaintiff was employed as an officer with the Milford Police Department ("MPD") since 2017. *Id.* ¶10. In 2018, MPD began investigating Plaintiff for an incident of misconduct that occurred in 2018. *Id.* ¶¶14-17. Following the investigation, MPD terminated Plaintiff's employment "due to poor performance and repeated lapses in judgment while still on probation." *Id.* ¶19.[2] Plaintiff then sued MPD and other City of Milford officials in connection with his

---

[1] As Defendants must, they assume the facts alleged in Plaintiff's Complaint are true solely for the purposes of this motion.
[2] Plaintiff notes he was on probation under the terms of the Milford and General Teamsters Local 326 Union Contract. D.I. 1, ¶¶11-12.

termination, claiming violations of his due process rights under the Fourteenth Amendment and of the Law Enforcement Officer's Bill of Rights.  *Id.* ¶21.   That lawsuit was ultimately settled in April 2020 and dismissed in March 2021.  *Id.* ¶22.

Plaintiff then began applying for employment with various police departments in Delaware.  *Id.* ¶23.  Plaintiff's attorney reached out to the DOJ seeking to ensure there were "no repercussions to Plaintiff as a result of the alleged incident claimed by [MPD]."  *Id.* ¶24.  DOJ Deputy Attorney General Stephen Welch advised Plaintiff that he had "not seen any proposed additions to the Brady List, but noted they would have to review the case if his office received a referral."  *Id.* ¶25.

 The "Brady List" is named for the United States Supreme Court case of *Brady v. Maryland*, where the Supreme Court held that the prosecution must turn over exculpatory evidence to a criminal defendant.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The List is an "internal working document for prosecutors to assist them in satisfying their constitutional obligations" under *Brady*, and its progeny, in the course of criminal prosecutions.  *State v. Jackson*, 2022 WL 18401412, at *3 n.24 (Del. Super. Ct. Dec. 28, 2022).  Contrary to Plaintiff's claim that the List is a do-not-hire-list, D.I. 1, ¶27, the List does not dictate the employment hiring decisions of Delaware police agencies; indeed, the List does not concern employment hiring at all.  The List is simply DOJ's attempt to meet its disclosure obligations and ensure "communication of all relevant information on each case to every lawyer who deals with it."  *Giglio v. United States*, 405 U.S. 150, 154 (1972).

In March 2021, a Delaware State University Police officer conducting a background check on Plaintiff informed Plaintiff that the Delaware Council on Police Training ("COPT"), who are statutorily tasked with establishing minimum educational and training qualifications for Delaware

police officers and oversees certification of Delaware police officers,[3] "believed" Plaintiff was on the Brady List. D.I. 1, ¶26. Besides being informed that he may be on the List, Plaintiff does not allege that Delaware State University Police denied him employment because of his inclusion on the List. Further, Plaintiff does not allege what other police agencies he applied to in Delaware or whether any other agency contacted him regarding his employment applications. It is not even clear where Plaintiff is currently employed.

On March 8, 2021, the DOJ advised Plaintiff that he could submit a written submission contesting his placement on the List and the Brady Board would consider "what weight, if any, should be given to the submitted materials." *Id.* ¶30. Five months later, in October 2021, Plaintiff submitted a letter to the DOJ seeking removal from the Brady List and contending that his actions as an MPD officer did not warrant placement on the Brady List. *Id.* ¶33. Plaintiff then filed the Delaware Superior Court action in March 2022. *Id.* ¶35.

## ARGUMENT

### I. LEGAL STANDARD

While the Court must accept the "well pleaded" factual allegations of the Complaint as true in considering this motion, more is required than mere "'labels and conclusions.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court need not assume the truth of legal conclusions, nor of "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 678.

After disregarding any legal conclusions, the Court must determine whether the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir.

---

[3] 11 Del. C. §§ 8404, 8410.

4

2009); *see also Iqbal*, 556 U.S. at 678. The complaint must do more than allege the plaintiff's entitlement to relief; it must instead "show" such an entitlement with its facts. *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When proceeding under Rule 12(b)(6), the Court may examine the claims alleged and documents "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The document need not be specifically cited in a complaint as the critical issue is "whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id*.

## II.  THE DELAWARE ATTORNEY GENERAL AND CHIEF DEPUTY ATTORNEY GENERAL SHOULD BE DISMISSED AS PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD HOW THEY WERE PERSONALLY INVOLVED

Plaintiff's claims against the Delaware Attorney General and Chief Deputy Attorney General are general assertions that fail to meet the federal pleading standard outlined in *Iqbal/Twombly*.[4]  When alleging a constitutional violation pursuant to 42 U.S.C. § 1983, a plaintiff must sufficiently allege how the government official was personally involved in the constitutional violation. *See Turney v. Att'y Gen. for U.S. ex rel. Sec'y of Lab.*, 502 F. App'x 180, 183 (3d Cir. 2012) (dismissing U.S. Attorney General Holder as a defendant where the plaintiff failed to allege his personal involvement with specificity). A "defendant is 'liable only for [his] own unconstitutional conduct.'" *Showell v. Carney*, 2021 WL 3633641, at *3 (D. Del. Aug. 16, 2021)

---

[4] To the extent Plaintiff's third count is not otherwise dismissed, his Delaware constitutional claim is based on the same facts as his Fourteenth Amendment claim. *See Law v. Pierce*, 2020 WL 6799162, at *1 n.1 (D. Del. Nov. 19, 2020).

(quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014)) (finding the plaintiff failed to plead allegations of personal involvement by Governor Carney).

Phrased differently, Plaintiff cannot base a defendant's alleged liability on respondeat superior. *See Alexander v. Minner*, 2009 WL 1176456, at *4 (D. Del. May 1, 2009) (quoting *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)) (dismissing Attorney General Danberg because the plaintiff failed to allege his personal involvement).

Here, Plaintiff asserts that the Delaware Attorney General is the highest-ranking member of the DOJ, supervises, directs, and controls the DOJ, and is a policy maker for the DOJ. D.I. 1, ¶¶41-42. Similarly, Plaintiff states that the Chief Deputy Attorney General is the second-highest member of the DOJ and "assists the Attorney General in setting policy and procedure for the DOJ." *Id.* ¶¶43-44. Beyond his allegations that the Attorney General and Chief Deputy Attorney General are liable because of their supervisory positions, Plaintiff alleges they are liable because they were "aware" Plaintiff had been placed on the List, "ignored" it, and "continue to deny Plaintiff due process." *Id.* ¶¶39, 46, 49. They are both sued in their official and individual capacities. *Id.* ¶¶50-51.

Plaintiff's assertions fail to adequately allege how the Delaware Attorney General and Chief Deputy Attorney General were personally involved in this case. *See Amaro v. Taylor*, 170 F. Supp. 2d 460, 464 (D. Del. 2001) ("'Allegations of personal direction or of actual knowledge and acquiescence' are adequate to demonstrate personal involvement.") (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Plaintiff also does not allege any facts supporting his claim that the Attorney General and Chief Attorney General were personally involved. Rather, Plaintiff simply asserts that the officials were "aware" of his claims because they were served with copies of his Superior Court petition in

2022—but that is insufficient to allege personal involvement. *Id.* As evidenced in a recent Delaware Superior Court opinion, once an individual is placed on the List and disclosed to defense counsel in a case, the individual cannot simply be removed from the list, as the trial court has a say in the removal of the individual. *See Jackson*, 2022 WL 18401412, at *5 & n.45, *7 n.59.

In *State v. Jackson*, Jackson moved to suppress the firearm and drugs the State seized when his vehicle was stopped and searched because Wilmington Police Department ("WPD") Corporal Akil's sole observations were insufficient to stop the vehicle. *Id.* at *1. Jackson—who was informed by the State that Cpl. Akil was placed on DOJ's Brady List due to his averments in an arrest warrant and testimony at a preliminary hearing that were not factually accurate in a 2020 case—also argued that Cpl. Akil's credibility issues from a prior case undermined the constitutionality of the stop. *Id.* at *1, 3. In the 2020 case, Cpl. Akil stated that he had received information from a confidential informant to describe how he gathered online information while logged into his own "camouflaged" social media account. *Id.* at *3.

Because Cpl. Akil's description of his own online conduct as originating from a confidential informant was based on advice from a DOJ deputy attorney general,[5] the State in *Jackson* sought to prohibit any questioning of Cpl. Akil's conduct in the 2020 case moving forward and, by extension, absolve him of inclusion on the Brady List. *Id.* at *5 & n.45, *7 n.59. The Court refused, deeming the evaluation of whether specific instances of conduct were admissible under Delaware Rule of Evidence 608 as "proceeding-specific." *Id.*

## III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Plaintiff has failed to allege any facts supporting his claims

---

[5] The email stated, "[i]t is acceptable to list information obtained from Instagram as coming from a confidential informant." *Jackson*, 2022 WL 18401412, at *4.

Plaintiff's suit is premised on his legal conclusion that he was denied his procedural due process rights under the Fourteenth Amendment to the U.S. Constitution and Article I, Section 7 of the Delaware Constitution when he was placed on the List without first being provided a hearing. D.I. 1, ¶¶55-56, 58, 62, 66. To assert a procedural due process claim under §1983, a plaintiff "must 'allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law.'" *Gillespie v. Hocker*, 2015 WL 4468922, at *3 (D. Del. July 22, 2015) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)) (internal quotation marks omitted).

Plaintiff frames his individual interest here as a "property right in employment" and alleges that he "continues to be barred from employment in his chosen profession of sworn police officer" because of his inclusion on the List. D.I. 1, ¶¶55-56, 58, 62, 66. Yet, Plaintiff has not alleged any facts that he was barred from the profession because he was on the List. Plaintiff states, in conclusory fashion, that "[p]lacing a sworn law enforcement officer on the Brady List effectively forecloses employment opportunities in law enforcement as Police Departments will not hire a police officer whose testimony may be discredited at a criminal trial because of their inclusion on the Brady List." D.I. 1, ¶27. This statement does not contain any averments of fact.

Plaintiff's only averment of fact regarding the List and employment, is that a Delaware State University Police officer conducting a background check on Plaintiff advised him that the COPT believed he was on the List. *Id.* ¶26. This statement simply alleges that Plaintiff was informed he may be on the List, not that he was denied employment because he was on the List. Plaintiff does not allege what other police agencies he applied to in Delaware or whether any other

agency contacted him regarding his employment applications. It is not even clear where Plaintiff is currently employed.

Further, even if he did allege that Delaware State University Police denied him employment because he was on the List, one employment opportunity does not render one barred from employment of the whole profession.

Because Plaintiff has failed to allege sufficient facts supporting his assertion that his constitutional rights were violated, his Complaint should be dismissed.

**B. Plaintiff does not Possess a Protected Property Interest under the Fourteenth Amendment or Article I, Section 7 of the Delaware Constitution because Inclusion on the Brady List is not a Complete Prohibition**

Assuming *arguendo* that Plaintiff properly pled facts to support his claims, Plaintiff's inclusion on the List does not exclude him from becoming employed as a police officer in Delaware. "'It is the liberty to pursue a calling or occupation'" which is protected by the Fourteenth Amendment. *O'Donnell v. Simon*, 362 F. App'x 300, 304 (3d Cir. 2010) (quoting *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994)).

Preliminarily, if Plaintiff is arguing that he possesses a property interest in his employment with Delaware State University, he is incorrect. The Third Circuit has expressly stated "[s]tate actions that exclude a person from one particular job are not actionable in suits ... brought directly under the due process clause." *O'Donnell v. Simon*, 362 F. App'x 300, 304 (3d Cir. 2010) (quoting *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994)).

Plaintiff's claim that his inclusion on the List prevents him from being hired as a police officer in Delaware is incorrect.[6] As evidenced in *State v. Jackson*, a police officer can

---

[6] Plaintiff has not claimed that his employment with MPD was terminated due to his inclusion on the List. Plaintiff states that he was terminated due to "poor performance and repeated lapses in judgment while still on probation." D.I. 1, ¶19.

concomitantly be on the List and employed by a Delaware police agency.  *See Jackson*, 2022 WL 18401412, at *1 (noting Wilmington Police Department Corporal Akil was on the list and an officer of the Wilmington Police Department); *see also Tillotson v. Dumanis*, 2012 WL 667046, at *5 (S.D. Cal. Feb. 28, 2012), *aff'd*, 567 F. App'x 482 (9th Cir. 2014) (holding that even though the plaintiff was told he was not hired based on his inclusion on the Brady list the court did not find a violation of his procedural due process rights because he did not show that law enforcement agencies were completely prohibited from hiring him).  This is because the prosecutor's duty under *Brady* to include a police officer on the List does not dictate the discipline imposed by the police agency, much less the agency's decision whether to hire an officer.  *Jackson*, 2022 WL 18401412, at *3 & n.28, *4 (noting that after the DOJ informed the Wilmington Police Department of the officer's placement on the Brady List, the police department conducted its own investigation and determined not to discipline the officer).

Plaintiff's conclusory statement that "Police Departments will not hire a police officer whose testimony may be discredited at a criminal trial because of their inclusion on the Brady List" is belied by *Jackson*.  As evidenced by *Jackson*, the trial court did not completely discredit Cpl. Akil's testimony but engaged in a credibility determination and gave appropriate weight to his testimony.  *Id.* at *10; *see also Tofsrud v. Spokane Police Dep't*, 2021 WL 2229277, at *10 (E.D. Wash. June 2, 2021), *aff'd sub nom. Tofsrud v. City of Spokane*, 2022 WL 1451394 (9th Cir. May 9, 2022), *cert. denied*, 143 S. Ct. 215 (2022) ("However, [the plaintiff's] inclusion on the Brady list is not a complete bar on his ability to testify in court.").

Because Plaintiff does not possess a recognizable property interest here, the Complaint should be dismissed.

## C. Plaintiff's Procedural Due Process Rights were not Violated because he was provided an Opportunity to Be Heard.

The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires the "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "Generally, 'the Constitution requires some kind of a hearing before the State deprives a person of liberty or property.'" *Saucon Valley Manor, Inc. v. Miller*, 392 F. Supp. 3d 554, 573 (E.D. Pa. 2019) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).

However, where "there is 'the necessity of quick action by the State,' or where 'providing any meaningful predeprivation process' would be impractical, the Government is relieved of the usual obligation to provide a predeprivation hearing." *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330 (1986)).

Plaintiff asserts that he was denied due process because he was not provided notice and an opportunity to contest his placement on the List in a fair and impartial hearing. *Id.* ¶40. Plaintiff conveniently ignores the unpredictability of the prosecutor's duty to disclose under *Brady* and its progeny. That is, the prosecutor's duty to disclose cannot wait for the notice and scheduling of a hearing. Given that the prosecutor's duty to disclose under *Brady* and its progeny may arise at any time, post-deprivation is demanded under these unique pressures, and Plaintiff has not alleged how he was denied an opportunity to be heard where he was invited to submit a letter contesting his placement on the List. D.I. 1, ¶30.

In *Matthews v. Eldridge*, the Supreme Court outlined three factors that a court must balance in determining whether the procedural due process is adequate:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 335. Assuming Plaintiff possesses a property interest here, his private interest would be his placement on the List and the prohibition on his potential employment as a Delaware law enforcement officer. *Tillotson*, 2012 WL 667046, at *6. Alternatively, the government's interest is stronger as its maintenance of the List and the decision to place Plaintiff on the list is demanded, and guided, by U.S. Supreme Court precedent. *Id.* The risk of erroneous deprivations to Plaintiff is considerably lower where the prosecutor's placement of Plaintiff on the List is guided by U.S. Supreme Court precedent and Plaintiff is provided an opportunity to contest his placement on the List. Based on the *Matthews* factors, the procedural due process granted to Plaintiff was constitutionally sufficient.

## IV. DEFENDANTS ARE IMMUNE FROM SUIT

### A. The Delaware Department of Justice should be Dismissed from this Case Because it Enjoys Sovereign Immunity

Plaintiff names the DOJ as a defendant in this case. D.I. 1, ¶¶2, 55, 62, 66.[7] The DOJ should be dismissed from this case because it is entitled to sovereign immunity under the Eleventh Amendment to the U.S. Constitution. "Absent a state's consent, the eleventh amendment bars a civil rights suit in federal court that names the state as a defendant, even a claim seeking injunctive relief." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981). The State has not waived this

---

[7] Although Plaintiff refers collectively to the DOJ, Delaware Attorney General, Chief Deputy Attorney General, and Brady Board John Does as "Defendants," the DOJ is not listed as a defendant under Count II. D.I. 1, p.1.

right to immunity and Congress did not abrogate said immunity when it enacted §1983. *See Alston v. Admin. Offs. of DE Cts.*, 663 F. App'x 105, 108 (3d Cir. 2016).

Because claims against the DOJ are "equivalent" to claims against the State, DOJ is entitled to sovereign immunity and should be dismissed from this case. S*ee White v. Bramble*, 2006 WL 182055, at *2 (D. Del. Jan. 24, 2006); *see also Robinson v. Danberg*, 729 F. Supp. 2d 666, 675 (D. Del. 2010) ("The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.").

### B. The Brady Board, Delaware Attorney General, and Chief Deputy Attorney General Enjoy Absolute Prosecutorial Immunity

The United States Supreme Court requires prosecutors to provide criminal defendants with information that is exculpatory, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963), or relevant to impeaching a witness where the witness' reliability may be determinative of guilt or innocence of a criminal defendant. *See Giglio v. United States*, 405 U.S. 150, 153 (1972). This requirement extends to information contained within government employee personnel files, as reviewing courts impute the knowledge of any exculpatory information in agency files to the prosecutor's office. *Id.* at 154 ("[W]hether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government."); *see also United States v. Agurs*, 427 U.S. 97, 110 (1976) ("If evidence highly probative of innocence is in his file, [the prosecutor] should be presumed to recognize its significance even if he has actually overlooked it."). The Supreme Court placed the burden on prosecution offices to establish "procedures and regulations" to meet its disclosure obligations and "insure communications of all relevant information on each case to every lawyer who deals with it." *Giglio*, 405 U.S. at 154.

In 1976, four years after *Giglio*, the U.S. Supreme Court held that prosecutors were entitled to absolute prosecutorial immunity when their conduct was "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The Supreme Court has since extended the umbrella of absolute immunity to additional prosecutorial conduct, including the failure to supervise or train prosecutors and failing to establish an information system for disclosing potentially impeachment material about informants. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 339 (2009).

In *Van de Kamp*, the Supreme Court noted that the management task of determining how and when to make impeachment information available for trial is "directly connected to the prosecutor's basic trial advocacy duties" and, therefore, meets the tenets expressed in *Imbler*. *Id.* at 346. The Court dispensed with the defendant's argument that the prosecution office should not be entitled to immunity for failing to establish a system that would permit prosecutors to access informant impeachment information because it was purely administrative. *Id.* at 348. The Court held that deciding what should be (and not be) included in an information system requires knowledge of the law and is closely related to the judicial phase of the criminal process. *Id.* at 348-49.

The U.S. Supreme Court's analysis in *Van de Kamp* applies with equal force here. Plaintiff asserts that the John Doe members of the Brady Board are "DOJ attorneys who determine whether individuals should be placed on the Brady List pursuant to DOJ policy" and that each John Doe member of the Brady Board participated in the decision to place Plaintiff on the List. D.I. 1, ¶¶45, 47. The Brady Board's maintenance of the List and determinations as to who should be included on the list are also information management that is closely related to the judicial phase of the criminal process. *See Adamson v. Pierce Cnty.*, 2022 WL 1667016, at *4 (W.D. Wash. May 25,

2022) ("Decisions about whether to investigate and how to keep track of potential Brady information fits logically into this camp, a function that, though technically administrative, is intimately related to a prosecutor's obligations as an officer of the court.").  As the District Court for the Eastern District of California explained:

> Placing [the plaintiff's] name on a Brady List, disclosing what the district attorneys considered to be Brady Material, and not utilizing objective criteria for Brady List determinations is conduct that requires witness evaluation, involves obligations imposed pursuant to the Supreme Court (*Brady v. Maryland*), requires the application of legal knowledge, and is associated with the judicial phase of the criminal process.

*Neri v. Cnty. of Stanislaus Dist. Attorney's Off.*, 2010 WL 3582575, at *6 (E.D. Cal. Sept. 9, 2010).

Given that placing the Plaintiff on the List is considered prosecutorial conduct entitled to absolute prosecutorial immunity, the John Doe members of the Brady Board should be dismissed from this case.

Under a similar analysis, the Delaware Attorney General and Chief Deputy Attorney General are also entitled to absolute prosecutorial immunity.  While Plaintiff does not allege that they are members of the Brady Board, Plaintiff alleges that they are liable in their supervisory capacity over the Brady Board, including the decision of the Board to include Plaintiff on the List.

This Court has held that the Attorney General has prosecutorial immunity against a plaintiff's claims that relate to her supervision of DOJ and "prosecutorial conduct."  *Buchanan v. Gay*, 491 F. Supp. 2d 483, 496 (D. Del. 2007).  In *Buchanan v. Gay*, the plaintiff sued a host of Delaware judges, courts, attorneys, and others stemming from proceedings in Delaware Family Court.  *Id.* at 488.  The plaintiff sued then-Judge Jane Brady for her oversight of the DOJ when she was Delaware's attorney general and the office's failure to timely dismiss charges against him given the unconstitutional actions of the Delaware Court system, as well as its failure to pursue complaints of felony misconduct against his attorney who represented him during his domestic

relations proceedings. *Id.* at 489. Relying on *Imbler*, this Court held that Judge Brady was entitled to absolute prosecutorial immunity based on the fact that the plaintiff's allegations touched on "prosecutorial conduct" and were against Judge Brady on the basis of her position. *Id.* at 496 (citing *Imbler*, 424 U.S. at 430).

The Court's rationale in *Buchanan* is applicable to the suit against the Delaware Attorney General and Chief Deputy Attorney General in this matter. As discussed above, maintenance of the List and determinations as to who should be included on the list are information management that is closely related to the judicial phase of the criminal process. Therefore, their alleged supervision of such conduct is similarly protected by absolute prosecutorial immunity.

### C. The Brady Board, Delaware Attorney General, and Chief Deputy Attorney General Are Entitled to Qualified Immunity

Even if the Court finds the Brady Board, Delaware Attorney General, and Chief Deputy Attorney General are not entitled to absolute prosecutorial immunity, they are entitled to qualified immunity. "'Prosecutors who are not entitled to absolute immunity from a plaintiff's claims may nonetheless be entitled to qualified immunity from those same claims.'" *Weimer v. Cnty. of Fayette*, 972 F.3d 177, 190 (3d Cir. 2020) (quoting *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 139 (3d Cir. 2006)).

The U.S. Supreme Court has outlined that qualified immunity "'attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7–8 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 78-79 (2017)). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)).

The right not only has to be "beyond debate," *id.* (quoting *White*, 580 U.S. at 79), but narrowly drawn. *See Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004); *accord Estep v. Mackey*, 639 F. App'x 870, 873-74 (3d Cir. 2016) (vacating and remanding district court's order because it failed to identify the constitutional right violated with specificity).

As detailed above, Plaintiff has failed to sufficiently plead that a constitutional violation occurred in this case. *See Southerland v. Pennsylvania*, 389 F. App'x 166, 170 (D. Del. 2010) (stating the first inquiry into the qualified immunity analysis is whether the plaintiff has alleged sufficient facts of a constitutional violation). Because of this, the Complaint should be dismissed. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding district courts need not proceed to the second factor of qualified immunity if they began with the first).

However, even if the Court is inclined to continue to the second factor, the Brady Board, Delaware Attorney General, and Chief Deputy Attorney General did not violate a constitutional right that was "clearly established." To determine whether a right is clearly established, courts look first to Supreme Court precedent, then controlling authority in Third Circuit jurisprudence, and finally whether there is a "robust consensus of cases of persuasive authority" by sister circuits. *See Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020) (quoting *Barna v. Bd. of Sch. Dirs.*, 877 F.3d 136, 142 (3d Cir. 2017)). The Supreme Court has repeatedly stated that courts are "'not to define clearly established law at a high level of generality.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The fundamental question is 'whether the violative nature of particular conduct is clearly established." *Id.*

Defendants have not found a U.S. Supreme Court case, Third Circuit precedent, or a robust consensus establishing that the placement of Plaintiff on a Brady List in accordance with their legal, prosecutorial responsibilities and granting the plaintiff a right to contest his placement on

the Brady List violates a clearly established right. Because Plaintiff has not pled (and is unable to plead) a constitutional violation of a clearly established right, the Complaint should be dismissed.

### D. The Brady Board, Delaware Attorney General, and Chief Deputy Attorney General Are Entitled to Sovereign Immunity as to Counts III and IV

The U.S. Supreme Court has held that a federal court demanding state officials conform their conduct to state law infringes on the principles of federalism and undermines state sovereignty. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Relying on *Pennhurst*, this Court has stated that the Eleventh Amendment bars "suits against state officials on the basis of state law." *Kimbleton v. White*, 2014 WL 4386760, *4 (D. Del. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)). Therefore, the Brady Board, Delaware Attorney General, and Chief Deputy Attorney General would also be immune from Plaintiff's third count under DEL. CONST. art. I, § 7 and fourth count which requests a writ of mandamus pursuant to Delaware law.

## V. COUNTS III AND IV OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THEY FAIL AS A MATTER OF LAW

### A. Count III of the Complaint should be Dismissed Because Plaintiff Does Not Enjoy a Private Cause of Action Under Article I, Section 7 of the Delaware Constitution

In Count III, Plaintiff contends that Defendants violated his procedural due process rights under DEL. CONST. art. I, § 7 when he was deprived of his property right in employment without due process. D.I. 1, ¶62. Plaintiff's claim fundamentally fails because Delaware courts have not recognized a private cause of action under DEL. CONST. art. I, § 7 for a violation of due process. In *Carr v. Town of Dewey Beach*, this Court declined the plaintiff's invitation to recognize a due process cause of action similar to §1983 under art. I, §7 of the Delaware Constitution. *See Carr v. Town of Dewey Beach*, 730 F. Supp. 591, 600 (D. Del. 1990). In fact, this year, the Delaware

Superior Court held that art. I, §7 does not afford a private cause of action. *See Rodriguez v. Cahall*, 2023 WL 569358, at *6 (Del. Super. Ct. Jan. 27, 2023); *see also Schueller v. Cordrey*, 2017 WL 568344, at *2 (Del. Super. Ct. Feb. 13, 2017) (declining to find a cause of action under art. I, §6 and explaining that there is no enacting legislation in Delaware similar to §1983 which creates a cause of action under the Delaware Constitution).

As Count III asserts a right of recovery under state law which has not been recognized by this Court or the Delaware Superior Court, it should be dismissed with prejudice for failure to state a claim.

### B. Count IV of the Complaint Should Be Dismissed Because Defendants Are State Actors and the Writ of Mandamus is Based on Delaware Law

In Count IV, Plaintiff requests a writ of mandamus against Defendants based on their violation of his Delaware constitutional rights. D.I., ¶66. The All Writs Act grants federal district courts the ability to issue "writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a); *see also Desmond v. Phelps*, 2017 WL 586358, at *1 (D. Del. Feb. 13, 2017). The United States Code grants the federal district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361; *accord In re Wallace*, 438 F. App'x 135, 137 (3d Cir. 2011).

The Court of Appeals for the Third Circuit has stated that a federal district court does not possess jurisdiction to issue a writ of mandamus to compel action by a state official. *See In re Wolenski*, 324 F.2d 309, 309 (3d Cir. 1963); *see also De La Cruz v. Irizarry*, 946 F. Supp. 2d 244, 251 (D.P.R. 2013) (describing Plaintiffs' argument that the federal district court possessed authority to issue a writ of mandamus and compel state officials as a "plainly incorrect reading of the statute"). Moreover, Plaintiff has based his writ on a violation of state law and this Court is

unable to compel state officials to follow state law. *Desmond*, 2017 WL 586358, at *1 (citing *Cochran v. Mun. Ct. of City of Barberton*, 91 F. App'x 365 (6th Cir. 2003)). Therefore, Count IV should be dismissed with prejudice.

## VI.   THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Given that Plaintiff's federal claims fail to state a claim, the Court should decline to exercise supplemental jurisdiction over Plaintiff's claim that Defendants violated DEL. CONST. art. I, § 7 or request for a writ of mandamus. D.I. I, ¶¶61-66. A district court may decline to exercise supplemental jurisdiction where "the claim raises a novel or complex issue of state law" or "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1), (3).

Here, the claims are novel because the Delaware Supreme Court has not ruled on either issue before and, for the reasons outlined above, Plaintiff has failed to state claims which permit the Court to exercise original jurisdiction over these remaining claims. For these reasons, the third and fourth counts should be dismissed. *See Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017).

Moreover, under 28 U.S.C. § 1367(c)(3), the Court "must decline" to exercise supplemental jurisdiction in such circumstances "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Id.* (quoting *Hedges v. Mosco*, 204 F.3d 109, 123 (3d Cir. 2000)). In the present matter, no such affirmative justification exists for the Court to exercise supplemental jurisdiction over Plaintiff's state law claims.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court dismiss Plaintiff's Complaint with prejudice and deem amendment futile.

20

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**


/s/ Zachary S. Stirparo
Zachary S. Stirparo (#6928)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
Zachary.Stirparo@delaware.gov
*Attorney for Defendants*

Date: July 31, 2023

# CERTIFICATE OF SERVICE

The undersigned certifies that on July 31, 2023, he caused a true and correct copy of

*Defendants' Opening Brief in Support of their Motion to Dismiss the Complaint* to be

electronically filed with the Clerk of Court using CM/ECF and delivered to the following

persons:

GARY E. JUNGE (#6169)
Schmittinger & Rodriguez, P.A.
414 South State Street
P.O. Box 497
Dover, Delaware 19903-0497
*Attorney for Plaintiff*

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Zachary S. Stirparo*
Zachary S. Stirparo (#6928)

Date: July 31, 2023