## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES E. JOLES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:23-cv-221-RGA |
| | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| JUSTICE, KATHY JENNINGS, in her | ) | |
| official capacity as Attorney General and in | ) | |
| her individual capacity, ALEXANDER | ) | |
| MACKLER, in his official capacity as | ) | |
| Chief Deputy Attorney General and in his | ) | |
| individual capacity, and JOHN DOES | ) | |
| unknown number, being all members of the | ) | |
| Brady Board from July 2018 through | ) | |
| present, in their official and in their | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Presently before the court in this civil rights action brought by Plaintiff James E. Joles (hereinafter "Plaintiff") under 42 U.S.C. § 1983 is a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Delaware Department of Justice (hereinafter "DOJ"), Delaware Attorney General Kathy Jennings, Delaware Chief Deputy Attorney General Alexander Mackler, and John Doe-members of the *Brady* Board.[1] (D.I. 12)  For the reasons that follow, the court recommends that Defendants' motion be **GRANTED**.

---

[1] The briefing on the motion to dismiss is found at D.I. 13, D.I. 15, and D.I. 19.

## I.     BACKGROUND

This case arises from the presumed placement of Joles on a so-called "*Brady* List" by one or more of the Defendants.  The name of the list is derived from the case of *Brady v. Maryland*, 373 U.S. 83 (1963), which requires the prosecutor to disclose to a defendant in a criminal case evidence that is favorable to the defendant or material either to the defendant's guilt or punishment.  Such exculpatory evidence also includes impeachment evidence.  *Giglio v. United States*, 405 U.S. 150, 154–55 (1972).

According to the complaint, Plaintiff was hired as an officer by the Milford Police Department on August 1, 2017.  (D.I. 1 at ¶ 10)  On October 12, 2018, after being accused of misconduct but prior to the hearing he requested before a Disciplinary Hearing Board, Plaintiff was informed that he was fired "due to poor performance and repeated lapses of judgment" during his probationary period.  (*Id.* at ¶ 19; *e.g.* ¶ 14)  Plaintiff sued the Police Department under § 1983, the Delaware Constitution, and the Delaware Law Enforcement Officer's Bill of Rights in the District of Delaware in April 2019.  (*See id.* at ¶ 21)  That case was settled on April 15, 2020, and dismissed on March 10, 2021.[2]  (*Id.* at ¶ 22)

Soon after the settlement was reached on April 15, 2020, Plaintiff began searching for another job as a police officer in Delaware.  (*Id.* at ¶ 23)  In May of 2020, he had previously asked the DOJ to confirm that he was not on the "*Brady* List"[3] because of the alleged incident of his misconduct claimed by the Milford Police Department.  (*See id.* at ¶ 24)  Joles' complaint asserts, upon information and belief, that the *Brady* List is created by the *Brady* Board, which

---

[2] *Joles v. City of Milford*, C.A. No. 1-19-cv-00613-CFC.
[3] "Placing a sworn law enforcement officer on the *Brady* List effectively forecloses employment opportunities in law enforcement as Police Departments will not hire a police officer whose testimony may be discredited at a criminal trial because of their inclusion on the *Brady* List." (D.I. 1 at ¶ 27)

itself "consists of an unknown number of DOJ attorneys." (*Id.* at ¶ 45)  In response to Joles'

inquiry, a representative for DOJ replied that he had "not seen any proposed additions" placing

Plaintiff on the List. (*See id.* at ¶ 25)

On March 6, 2022, Plaintiff applied for a position with the Delaware State University

Police. (*See id.* at ¶ 26)  The officer for the Delaware State University Police who conducted

Plaintiff's background check contacted the Delaware Council on Police Training ("COPT").

(*Id.*)  The officer performing the background check for the Delaware State University Police told

Plaintiff that the COPT "believed" Plaintiff was on the *Brady* List.  (*Id.*)  Despite repeated

attempts to confirm his status on the *Brady* List, including through the written request Plaintiff

was asked to submit to the DOJ,  (*id.* at ¶ 30),  Plaintiff has not received a response from the

DOJ revealing whether he is on the *Brady* List or how to challenge his supposed placement on

the *Brady* List. (*E.g. id.* at ¶¶ 31–33)

Plaintiff sought a Writ of Mandamus from the Delaware Superior Court requesting that

the court order the DOJ to remove him from the *Brady* List.[4]  (*Id.* at ¶ 35)  The Superior Court

action was dismissed without prejudice on June 7, 2022.  (*Id.* at ¶ 38)  Plaintiff filed the pending

action in the District of Delaware on March 1, 2023.  (D.I. 1)  The complaint avers the following:

Counts I and II allege violations of § 1983 by Defendants in their official and individual

capacities, respectively, for depriving Plaintiff of his property right in employment without due

process in violation of the Fourteenth Amendment to the Constitution and failing to conduct a

hearing related to his supposed placement on the *Brady* List,  (*id.* at ¶¶ 55, 58);  Count III alleges

due process violations of Article I § 7 of the Delaware Constitution for the same reasons; and

---

[4] *Joles v. Delaware Dep't of Just.*, K22M-03-016-RLG.

Count IV requests a Writ of Mandamus instructing the DOJ to remove Plaintiff from the *Brady* List or, alternatively, to hold a hearing where he can contest his placement on the *Brady* List.

Defendants filed their motion to dismiss on July 31, 2023. (D.I. 12) In his answering brief, Plaintiff concedes that Counts III and IV should be dismissed because of the holding in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), that absent waiver of a state's sovereign immunity, the Eleventh Amendment prohibits federal courts from ordering state officials to conform their conduct to state law. (*E.g.* D.I. 15 at 18) Therefore, the court recommends dismissal with prejudice of Counts III and IV. Furthermore, Delaware's branches of government and its state agencies, such as the DOJ, are not persons subject to claims under § 1983. *Buchanan v. Gay*, 491 F. Supp. 2d 483, 493 (D. Del. 2007) (citing *Halderman*, 465 U.S. at 98–100). Plaintiff concedes that all claims he asserted against the DOJ are barred by sovereign immunity under the Eleventh Amendment. (D.I. 15 at 13) Therefore, the court recommends dismissal with prejudice of all Counts against the DOJ.

The pending motion was referred to the undersigned judicial officer by the district judge on October 4, 2023 (D.I. 18) and was fully briefed on November 3, 2023. (D.I. 19) This Report and Recommendation addresses the only claims remaining in Counts I and II for violations of § 1983 against Defendants Jennings, Mackler, and the John Doe-members of the *Brady* Board in their official and individual capacities.

## II.   LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint

and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.  DISCUSSION

Defendants have moved to dismiss the complaint on the basis of absolute prosecutorial immunity and sovereign immunity applicable to state officials under the Eleventh Amendment. In addition, they argue that the complaint does not sufficiently allege the personal involvement

5

of Defendants Jennings and Mackler as to any of Plaintiff's allegations, nor has Plaintiff alleged sufficient facts to state a claim for relief against all Defendants. Alternatively, Defendants argue that they have qualified immunity from liability for Plaintiff's § 1983 claims.

### A.  Immunity

Defendants' assertion of absolute immunity is a threshold issue for determination by the court. *See Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.D.C. 1981) (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)) ("We purposely consider the defendants' asserted immunity defenses before we consider plaintiff's claims on the merits" because "immunity, where justly invoked, properly shields defendants 'not only from the consequences of litigation's results but also from the burden of defending themselves'").

Plaintiff alleges in Counts I and II that Defendants' refusal to confirm or deny whether he is on the *Brady* List and their failure to hold a hearing to determine his proper status and/or removal from the list results in an ongoing deprivation of due process. (D.I. 1 at ¶¶ 55, 58) Plaintiff further alleges that the foregoing inaction of Defendants bars the Plaintiff "from employment in his chosen profession [as a] sworn police officer." (*Id.* at ¶ 56) The Counts are overlapping except that Count I claims injunctive relief against Defendants in their official capacities, *see, e.g. Ex Parte Young*, 209 U.S. 123, 159–60 (1908), whereas monetary damages for lost wages, compensatory, and punitive damages are claimed against Defendants in their individual capacities in Count II. *Martin v. Keitel*, 205 F. App'x 925, 928 (3d Cir. 2006).

"Absent a state's consent, the [E]leventh [A]mendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh,* 438 U.S. 781, 798 (1978) (*per curiam*)). This immunity extends to state agencies and entities. *C.H. ex rel Z.H. v. Olivia*, 226 F.3d 198, 201 (3d Cir. 2000) (en

6

banc).  Furthermore, "the Eleventh Amendment limits federal judicial power to entertain lawsuits
against a State and, in the absence of congressional abrogation or consent, a suit against a state
agency is proscribed." *Buchanan v. Gay*, 491 F. Supp. 2d 483, 493 (D. Del. 2007) (citing
*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–100 (1984)).

Count I asserts the same claim for relief as the Writ of Mandamus in Count IV.  In both
Counts, Plaintiff seeks an order from this court directing the DOJ and/or its agents to hold a
hearing allowing Plaintiff the opportunity to challenge his supposed placement on the *Brady* List.
Plaintiff 's claim for injunctive relief is prohibited under the Eleventh Amendment's grant of
sovereign immunity for the same reasons already acknowledged by the Plaintiff, which prohibit
granting his demand for a Writ of Mandamus.  The state of Delaware has not waived its
sovereign immunity under the Eleventh Amendment.  *Buchanan*, 491 F. Supp. 2d at 493.
Therefore, this court cannot order state officials to hold a hearing in accordance with an alleged
obligation under state law. *See Pennhurst*, 465 U.S. at 98–100.  Furthermore, § 1983 does not
allow monetary claims against state officials who are sued in their official capacities. *Buchanan*,
491 F. Supp. 2d at 493.  Thus, the court recommends dismissing Count I with prejudice. *See*
*Pennhurst*, 465 U.S. at 98–100.

Prosecutorial immunity bars the remaining claims against Defendants in their individual
capacities.  A prosecutor is absolutely "'immune from a civil suit for damages' for 'activities [ ]
intimately associated with the judicial phase of the criminal process.'" *Est. of Bardzell v.*
*Gomperts*, 2022 WL 843483, at *2 (3d Cir. Mar. 22, 2022) (quoting *Imbler v. Pachtman*, 424
U.S. 409, 430–31 (1976)) (alterations in original).  Absolute prosecutorial immunity reflects the
policy choice that it is preferable "to leave unredressed the wrongs done by dishonest officers
than to subject those who try to do their duty to the constant dread of retaliation." *Van de Kamp*

7

*v. Goldstein*, 555 U.S. 335, 340 (2009) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (Learned Hand, J.)).

The Third Circuit has recognized a dichotomy between a prosecutor's role in the judicial process and in an administrative capacity. The former imparts absolute immunity, while the latter does not. *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir. 1991)) ("Immunity extends to 'the preparation necessary to present a case,' and this includes the 'obtaining, reviewing, and evaluation of evidence.'"); *Odd v. Malone*, 538 F.3d 202, 213–14 (3d Cir. 2008) (failing to release a material witness from prison was an administrative task and did not confer prosecutorial immunity because "[t]he prosecutor is required to 'list' all detained witnesses, not to advocate any particular action with regard to those witnesses."); *Giuffre v. Bissell*, 31 F.3d 1241, 1253 (3d Cir. 1994) (prosecutor's role in selling plaintiff's forfeited property was an administrative task that did not confer prosecutorial immunity because the "alleged conduct cannot properly be characterized as acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial[.]") (quotations omitted). However, the Third Circuit has yet to confront the issue of whether prosecutors responsible for management of a *Brady* List enjoy absolute immunity from § 1983 suits arising from their inclusion of a law enforcement officer on such a list.

Defendants argue that they are absolutely immune from suit because the conduct in question was under the scope of their — or their subordinates' — prosecutorial conduct. (D.I. 13 at 13–16) Plaintiff argues without citation to any authority that his situation can be distinguished because his constitutional deprivation is ongoing, and Defendants' actions did not occur during the "judicial phase of a criminal process." (D.I. 15 at 16 (citing *Imbler*, 424 U.S. at 409)

The Supreme Court's decision in *Van de Kamp v. Goldstein* 555 U.S. 335 (2009), is controlling authority regarding the scope of prosecutorial immunity. In *Van de Kamp*, an incarcerated inmate filed a successful federal habeas petition asserting that prosecutors knew, but failed to produce, impeachment evidence pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), about a testifying jailhouse informant. 555 U.S. at 339–40. Upon release, the former inmate sued the District Attorney's Office under § 1983, claiming that its failure to establish a proper information management system to turn over *Brady/Giglio* evidence to defendants violated his constitutional rights. *Id.* at 338, 340. The former inmate, Goldstein, argued that information management is outside the purview of absolute immunity because it is strictly an administrative task unrelated to the "judicial phase of the criminal process." *Id.* at 343–44 (quoting *Imbler*, 424 U.S. at 430). But the Supreme Court rejected this argument finding that the system's maintenance was "directly connected with the conduct of a trial" and required legal knowledge and discretion. *Id.* at 344. It distinguished other types of administrative tasks that were not related to the judicial process, such as payroll and hiring decisions, that would not impart immunity. *Id.* The Court reasoned:

> The critical element of any information system is the information it contains. Deciding what to include and what not to include in an information system is little different from making similar decisions in respect to training. Again, determining the criteria for inclusion or exclusion requires knowledge of the law. . . .
>
> Consequently, where a § 1983 plaintiff claims that a prosecutor's management of a trial-related information system is responsible for a constitutional error at his or her particular trial, the prosecutor responsible for the system enjoys absolute immunity just as would the prosecutor who handled the particular trial itself.

*Id.* at 348–49.

Defendants argue that the *Brady* List at issue here is analogous to the information management system in *Van de Kamp* because it is "directly connected to the prosecutor's basic

trial advocacy duties." *Id.* at 346. They cite two cases from other district courts that have applied the Supreme Court's ruling in *Van de Kamp* to support a ruling that prosecutors have absolute immunity for maintenance of a *Brady* List because it is part of a prosecutor's core role in the judicial process. First is *Adamson v. Pierce County*, 2022 WL 1667016 (W.D. Wash. May 25, 2022). There, the plaintiffs were law enforcement officers in the Pierce County Sheriff's Department who were placed on a *Brady* List because they were allegedly involved in planting drugs on a suspect. *Id.* at *1–2. Plaintiffs claimed that the misconduct investigation and their subsequent placement on the *Brady* List was done in retaliation for engaging in protected speech, *i.e.*, vocally supporting a rival candidate for Pierce County Sheriff. *Id.* at *2. They brought § 1983 claims against two county prosecutors, in their individual and official capacities, for their involvement with placing Plaintiffs on the *Brady* List. *Id.* at *1. The court dismissed the claims against the two prosecutors with prejudice because maintaining a *Brady* List carries absolute prosecutorial immunity pursuant to *Van de Kamp*. *Id.* at *4. Although maintenance of a *Brady* List is "technically administrative," it nevertheless "is intimately related to a prosecutor's obligations as an officer of the court" because "[i]nvestigating and maintaining *Brady* information, including information from and about police officers who may serve as state witnesses, is a necessary element of [the] duty" to be aware of evidence favorable to the defense, as mandated by the Supreme Court. *Id.* This was true even though it was alleged that they acted with animus. *Id.* at *4–5.

Similarly in *Neri v. County of Stanislaus District Attorney's Office*, 2010 WL 3582575 (E.D. Cal. Sept. 9, 2010), the court dismissed a § 1983 claim arising from the plaintiff's inclusion on a *Brady* List. The case involved Plaintiff's termination from employment as a police officer following his placement on the *Brady* List. He brought a § 1983 claim against the

District Attorney's Office, alleging that they placed officers on the list without reference to any

established or objective criteria, and his placement on the *Brady* List was a retaliatory maneuver

by the District Attorney's Office because of its inability to secure a conviction against him on a

domestic violence charge.  The court rejected the Plaintiff's § 1983 claim that placement on the

*Brady* List violated his Fourteenth Amendment right to pursue his chosen profession as a police

officer.  The court held:

> [T]he decision of how one is placed on a *Brady* List, what materials are disclosed
> as *Brady* Materials, and whether to have certain express criteria for a Brady List
> "require[ ] knowledge of the law," would require "review of the [DAO's] legal
> judgments," and would be "intimately associated with the judicial phase of a
> criminal prosecution." *Van de Kamp,* 129 S.Ct. at 863–64. Under *Van de
> Kamp,* such conduct receives absolute immunity.

*Id.* at *8 (quotations and alterations in original).

The controlling authority of *Van de Kamp,* as applied by district courts in *Adamson* and

*Neri,* supports the court's recommendation that maintaining a *Brady* List is part of a prosecutor's

"core role in the judicial process" and carries absolute immunity.  *Adamson,* 2022 WL 1667016,

at *4.  In addition to *Adamson* and *Neri,* several other courts have likewise ruled that prosecutors

enjoy absolute immunity concerning *Brady* List determinations.  *E.g. Walters v. Maricopa Cnty.,*

2006 WL 2456173 (D. Ariz. Aug. 22, 2006) (finding that prosecutors were absolutely immune

from § 1983 claim pursuant to First Amendment retaliation for placing the plaintiff on *Brady*

List because "that decision is intimately tied to the judicial process[.]'"); *San Agustin v. El Paso

Cnty.,* 2019 WL 4059167 (D. Colo. Aug. 28, 2019) (finding that law enforcement officers "acted

as prosecutors" in adding name plaintiff's name to *Brady* List and were granted absolute

immunity from § 1983 claims because — citing *Neri* — assessment of witness credibility is

"'directly connected to the judicial phase of the criminal process[.]'"); *LaCrosse v. Clarkson,*

2019 WL 2571274 (D. Or. Mar. 22, 2019) (district attorneys were exercising prosecutorial function when they added the plaintiff to *Brady* List).

Despite arguing that the courts in other circuits have "expand[ed] the Supreme Court holdings well beyond what is proper," (D.I. 15 at 16), Plaintiff does not cite to any case authority in support of his position, nor does he cite any case in which a court has refused to grant absolute prosecutorial immunity related to placement of a police officer on a *Brady* List.

Instead, Plaintiff attempts to revive the same arguments that were unsuccessful in *Van de Kamp*, *Adamson*, and *Neri*. For example, Plaintiff asserts that his case is distinguishable because his constitutional deprivation is ongoing and thus cannot be considered "preparation" for a prosecution, nor is there a pending case involving Plaintiff that would require a prosecutor to turn over his name on the *Brady* List to a defendant. (D.I. 15 at 16–17) These arguments were rejected in *Neri*. 2010 WL 3582575, at *6 ("Neri emphasizes that the *Brady* List decision was made outside of a prosecution. The significance of this point is not clear. Once information concerning a witness or potential witness comes into the hands of a prosecutor, the prosecutor must evaluate how that evidence affects the witness or potential witness'[] credibility, including whether disclosure of the evidence may be necessary either now or at some later point."); *see also Van de Kamp*, 555 U.S. at 344 (maintenance of a *Brady* List "focus[es] upon a certain kind of administrative obligation — a kind that itself is directly connected with the conduct of a trial.").

Plaintiff next argues that determination of who is placed on a *Brady* List is investigative, rather than prosecutorial, because prosecutors must determine the legitimacy of complaints against officers. (D.I. 15 at 16) This argument was also rejected in *Neri*. 2010 WL 3582575, at *4 ("To determine whether an action is judicial, investigative, or administrative, [courts] look to

12

the nature of the function performed, not the identity of the actor who performed it.  Conduct is not investigative if the conduct does not involve the evidence gathering and witness interviewing functions normally performed by a detective or police officer.  When arguably administrative acts are directly connected with the conduct of a trial and necessarily require legal knowledge and the exercise of related discretion, absolute immunity is appropriate." (quotations and citations omitted) (alterations in original)).

Lastly, Plaintiff argues that he could have been placed on a provisional list while a post-deprivation hearing was conducted.  (D.I. 15 at 16–17)  However, Plaintiff does not mention this form of relief in the complaint, and he does not cite statutory or case authority in support of this position.  Furthermore, other courts have been consistent in ruling that the process of maintaining a *Brady* List is protected by absolute immunity. *See* discussion *supra* Section III(A) pp. 7–12; *cf Adamson*, 2022 WL 1667016, at *3 (prosecutors given absolute immunity for maintaining a *Brady* List despite no written policy for removal).

Therefore, the court recommends that Defendants' maintenance of a *Brady* List is part of their core prosecutorial role in the judicial process, which carries absolute immunity. Accordingly, Defendants' motion to dismiss should be **GRANTED**.  This recommendation renders moot the need to address Defendants' alternative arguments.

## IV.    CONCLUSION

Plaintiff's allegations center on the Defendants' failure to confirm whether Plaintiff is named on the *Brady* List and their failure to conduct a hearing to determine whether his supposed placement on the list is proper.  The court recommends that such actions are core to the role of a prosecutor.  Accordingly, Eleventh Amendment immunity and prosecutorial immunity bar this action against them in their official and individual capacities.

13

For these reasons, the court recommends that Defendants' motion to dismiss be **GRANTED** and the complaint dismissed with prejudice, as immunity renders amendment of the complaint futile.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(l)(B), Fed. R. Civ. P. 72(b)(l), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed, R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  February 14, 2024

Sherry R. Fallon
United States Magistrate Judge